# Exhibit A

Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielpllc.com
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
Tel: (202) 350-4783

Sophia Goren Gold (SBN 307971)
sgold@kalielgold.com
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

*Attorneys for Plaintiffs and the Proposed Class*

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
11/28/2022 at 12:05:18 PM
By: Xian-xii Bowie,
Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF ALAMEDA

CHARLES WANG, MARILEE BOGAERT,
AARON ASELTINE, ROBERT ALLAN
PERKINS, JR., CARISSA RECCO, and
CHRISTINE BAK, on behalf of themselves and
all others similarly situated,

     Plaintiffs,

v.

GRUBHUB INC., and DOES 1- 50, inclusive,


     Defendant.

Case No. 22CV022626

**CLASS ACTION COMPLAINT**


**[DEMAND FOR JURY TRIAL]**

Plaintiffs CHARLES WANG, MARILEE BOGAERT, AARON ASELTINE, ROBERT ALLAN PERKINS, JR., CARISSA RECCO and CHRISTINE BAK, on behalf of themselves and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiffs and through their attorneys as follows:

## NATURE OF ACTION

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Grubhub Inc. ("Defendant" or "Grubhub"), arising from its deceptive and untruthful promises to provide food delivery services for a flat, low cost "Delivery Fee."

2.      Since the beginning of the COVID-19 pandemic, Grubhub has aggressively marketed its flat, low cost "Delivery Fees," exploiting an opportunity presented by Americans' reduced willingness to leave their homes.   To appeal to consumers in a crowded food delivery marketplace, Grubhub has prominently marketed a flat, low cost "Delivery Fee" in its mobile application.

3.      These representations, however, are false.  Grubhub imposes hidden delivery charges on its users in two ways.

4.      First, Grubhub makes the "Delivery Fee" it quotes to users appear to be lower than it actually is by hiding a portion of that delivery fees in a different line item called "Taxes and Fees." Obscured from users and hidden within the "Taxes and Fees" amount is an additional "Service Fee" that is nothing more than a delivery fee in disguise.  This "Service Fee"—which is itself obscured from users and bundled with a sales tax—amounts to an additional 15% of the food order amount. But it is not a "Service Fee" at all.  Because the *only* "service" provided by Grubhub is food delivery, this "Service Fee" is by definition an additional hidden delivery fee.  Grubhub obscures the true nature of the fee by naming it a "Service Fee."

5.      Second, and even more insidiously, Grubhub secretly marks up food prices for delivery orders only by 15-20%, without informing users.  In other words, the identical food costs more when ordered through the Grubhub app than it does when ordered in person at a restaurant or through the restaurant's own website or app.  Because Grubhub's only function is to provide food delivery services, this price differential is another hidden delivery fee.

6.      Both of these hidden delivery upcharges make Grubhub's flat, low cost "Delivery Fee"

promises patently false.  The true delivery costs are obscured, as described above, and far exceed the prominent flat, low cost "Delivery Fee" promised.

7.    By falsely marketing flat, low cost "Delivery Fees," Grubhub deceives consumers into making online food purchases they otherwise would not make.

8.    Grubhub misrepresents the nature of the delivery charges assessed on the Grubhub mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of the flat, low cost "Delivery Fee" delivery promises, and that misrepresent the actual costs of the delivery service.

9.     Specifically, Grubhub omits and conceals material facts about the Grubhub delivery service, never once informing consumers in any disclosure, at any time, that: (a) use of the delivery service causes an increase in food prices; and (b) the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

10.    Hundreds of thousands of Grubhub customers like Plaintiffs have been assessed hidden delivery charges they did not bargain for.

11.    Consumers like Plaintiffs reasonably understand the flat, low cost "Delivery Fee" representations mean the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online from a restaurant and picking up food in person or ordering and picking up food in person.

12.    By unfairly obscuring its true delivery costs, Grubhub deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Grubhub restaurant competitors Del Taco, El Pollo Loco, and P.F. Chang's all offer delivery services through their app and website.  But unlike Grubhub, Del those apps fairly and prominently represent their true delivery charges.

13.    Plaintiffs and the Class members have been injured by Grubhub's practices. Plaintiffs bring this action on behalf of themselves, the putative Class, and the general public. Plaintiffs seek actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Grubhub from continuing to engage in its illegal practices described herein and to fairly allow consumers to decide whether they will pay Grubhub's delivery mark-ups.

**PARTIES**

14.    Plaintiff Charles Wang is a citizen of the State of California who resides in the City of Oakland, County of Alameda.

15.    Plaintiff Marilee Bogaert is a citizen of the State of California who resides in the City of Oakland, County of Alameda.

16.    Plaintiff Aaron Aseltine is a citizen of the State of California who resides in the City of El Cerrito, County of Contra Costa.

17.    Plaintiff Robert Allan Perkins, Jr., is a citizen of the State of California who resides in the City of Modesto, County of Stanislaus.

18.    Plaintiff Carissa Recco is a citizen of the State of California who resides in the City of San Jose, County of Santa Clara.

19.    Plaintiff Christine Bak is a citizen of the State of California who resides in the City of Chino, County of San Bernardino.

20.    Defendant, Grubhub Inc., is incorporated in Delaware and maintains its principal business offices in Chicago, Illinois.

**JURISDICTION AND VENUE**

21.    This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

22.    Plaintiffs are informed and believes that the State of California has personal jurisdiction over the Defendant named in the action because Defendant is a corporation authorized to conduct and does conduct business in this State. Defendant maintains its corporate headquarters in Illinois and is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market by conducting business throughout California, including in the County of Alameda, which has caused both obligations and liability of Defendant to arise in the County of Alameda.

23. The amount in controversy exceeds the jurisdictional minimum of this Court.

///

CLASS ACTION COMPLAINT

## COMMON FACTUAL ALLEGATIONS

A.    **Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic**

24.    In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

25.    US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

26.    The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

27.    Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, Doordash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

28.     According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

29.     The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

30.     In its 2019 Economic Report conducted by research firm Technomic, Grubhub reported that 86% of customers agreed that Grubhub played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

31.     The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (Grubhub, Uber Eats, Doordash, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

32.     The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said Grubhub was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of Grubhub.

33.     In the wake of the food delivery surge, Consumer Reports highlighted the need for fee

---

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

[8] *See* Technomic and Grubhub, 2019 Economic Impact Report, *The Impact of Grubhub on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.     Grubhub's App Fails to Bind Users to Any Terms of Service**

34.     When a consumer downloads the Grubhub app, or uses the Grubhub website, he or she is required to create an account in order to place an order for delivery or pickup.

35.     In order to do so, a user enters in a name and contact information.

36.     While the account creation screen contains a small hyperlink to view Grubhub's Terms of Service, users are not required affirmatively consent to such terms, such as by clicking a check box.

37.     Moreover, the Terms of Service are unenforceable to the extent they attempt to prohibit users from seeking public injunctive relief in any forum, in violation of the California Supreme Court's holding in *McGill v. Citibank*, N.A., 2 Cal. 5th 945 (2017). For avoidance of doubt, by way of this action, Plaintiffs seek public injunctive relief in order to prevent GrubHub from continuing to deceive California consumers.

**C.     Grubhub Prominently Promises a Flat, Low-Cost Delivery Fee on its App**

38.     Grubhub prominently features flat, low cost "Delivery Fee" promises on its mobile application.

39.     Such representations are made on the home screen of the app and throughout the purchasing process.

40.     These flat, low cost "Delivery Fee" representations are then reiterated on the penultimate screen shown to consumers before finalizing a food purchase.

---

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

41.    Specifically, that penultimate screen states:

Items Subtotal: [representing the cost of the food selected]

Delivery Fee:  [stated as a flat amount]

Taxes and fees:  [representing sales taxes and additional fees]

Total:  [adding up the above]

CONTINUE TO CHECKOUT:  [adding up the above]

42.    In the end, there was no way for Plaintiffs or other users of the Grubhub mobile application or website to avoid seeing Grubhub's promises of a flat, low cost "Delivery Fee."

**D.    Grubhub Omits and Conceals Material Facts About the Costs of the Grubhub Delivery Service**

43.    But those disclosures were false and misleading.

44.    <u>First</u>, Grubhub furtively marked up the cost of food reflected in the "Subtotal"—adding 15-20% to the cost of food ordered for delivery, as compared with the cost of the same food ordered from the restaurant directly, either online or in person.  Indeed, restaurants did not and do not make similar mark-ups for identical food items ordered for pickup via their apps or in person.

45.    Grubhub omitted this material fact from its app, never informing users of this secret food markup.

46.    This secret markup is in actuality a hidden delivery fee.  This alone renders false Grubhub's promise of a flat, low-cost "Delivery Fee," which is made repeatedly in the app, and then in the "Delivery Fee" line item on the order screen.

47.    If a user clicks an "i" button near the listed Delivery Fee, Grubhub doubles down on its misrepresentation, promising users that "this fee covers delivery-related costs for Grubhub."  Of course, all "costs" are "delivery-related."  Grubhub's disclosure promises the Delivery Fee is the exclusive charge for delivery, but that is false.

48.    In short, the "Delivery Fee" is not actually the flat fee quoted. The actual "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up at the restaurant—is the listed "Delivery Fee" *plus* the hidden food markup applied by Grubhub.

49.    <u>Second</u>, Grubhub applies a "Service Fee" exclusively to delivery orders, hides that "Service

Fee" from users behind a hyperlink, and misrepresents what the "Service Fee" is actually for:  a hidden delivery charge.

50. On the ordering screen, and for the first time in the ordering process, Grubhub presents a line item called "Tax and Fees."  The ordering screen does not explain what "Tax and Fees" are comprised of.

51. Indeed, the phrase "Tax and Fees" represents to reasonable consumers like Plaintiffs that the line item represents *government-imposed assessments* like taxes.  But that is not true.  By grouping Grubhub's own fees with government-imposed taxes, Grubhub intends to and does obscure the difference between the two.

52. Only if a user clicks on an "i" button near that line do two further line items appear: "Sales Tax" and "Service Fee."  "Sales Tax" adds the locally applicable sales tax rate. "Service Fee" adds a further charge of 15% of the total food cost.

53. But because Grubhub's sole "service" is to provide delivery of food, this "Service Fee" is by definition an additional hidden delivery charge.

54. In short, this is another reason the disclosed "Delivery Fee" is not actually the flat fee represented.  The *actual* "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden "Service Fee" markup applied by Grubhub.

55. If that were not enough, Grubhub misrepresents the true nature of the "Service Fee."

56. If a user clicks a further link next to "Service Fee," a disclosure appears stating that the fee "helps Grubhub cover operating costs."

57. This disclaimer is false and deceptive.  "Operating costs" for delivering food are elements of Grubhub's core service:  providing food delivery.  The "Service Fee" is a hidden delivery fee.

58. Grubhub does not inform consumers the true costs of its delivery service and it misrepresents its Delivery Fee as a low-cost, flat fee, when in fact those costs are actually much higher.

**E.    Other Restaurant Industry Actors and Grubhub Competitors Disclose Delivery Fees Fairly and Expressly**

59. By unfairly obscuring its true delivery costs, Grubhub deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Grubhub

competitors Del Taco, El Pollo Loco and P.F. Chang's all offer delivery services through their app and website. But unlike Grubhub, these restaurants fairly and prominently represent their true delivery charges.

60.    For example, Del Taco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

61.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

62.    Similarly, Grubhub competitor El Pollo Loco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

63.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

64.    Similarly, Grubhub competitor P.F. Chang's does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Estimate:

Tax:

65.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly

and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

**F.   Plaintiff Wang's Experience**

66.   Plaintiff Wang used the Grubhub app to make a purchase of food from Ole Ole Burrito Express on November 17, 2020, in the total amount of $45.97.

67.   When using the app, and prior to placing his order, the Grubhub app stated that the "Delivery Fee" was $0.99.

68.   However, the cost of the food ordered by Plaintiff Wang bore a hidden delivery fee markup. Upon information and belief, the exact same food items would have cost Plaintiff Wang 15-20% *less* if he had ordered for pickup or ordered in person. This differential represented a hidden delivery fee.

69.   In addition, Plaintiff Wang's purchase included a hidden "Service Fee" of $3.38 that in fact represented an additional delivery fee.

70.   Plaintiff Wang would not have made the purchase if he had known the Grubhub Delivery Fee was not truly $0.99.

71.   If he had known the true Delivery Fee, Plaintiff Wang would have chosen another method for receiving food or would have ordered from another provider.

**G.   Plaintiff Bogaert's Experience**

72.   Plaintiff Bogaert used the Grubhub app to make a purchase of food from A+ Burger on March 4, 2019, in the total amount of $22.36.

73.   When using the app, and prior to placing her order, the Grubhub app stated that the "Delivery Fee" was $5.99.

74.   However, the cost of the food ordered by Plaintiff Bogaert bore a hidden delivery fee markup. Upon information and belief, the exact same food items would have cost Plaintiff Bogaert 15-20% *less* if she had ordered for pickup or ordered in person. This differential represented a hidden delivery fee.

75.   Plaintiff Bogaert would not have made the purchase if she had known the Grubhub Delivery Fee was not truly $5.99.

76.   If she had known the true Delivery Fee, Plaintiff Bogaert would have chosen another

1    method for receiving food or would have ordered from another provider.

2        77.    Plaintiff did not discover and could not have reasonably discovered the hidden mark-up

3    until recently consulting with counsel.

4        **H.    Plaintiff Aseltine's Experience**

5        78.    Plaintiff Aseltine used the Grubhub app to make a purchase of food from Tasty Thai on

6    November 16, 2019, in the total amount of $90.34.

7        79.    When using the app, and prior to placing his order, the Grubhub app stated that the

8    "Delivery Fee" was $2.79.

9        80.    However, the cost of the food ordered by Plaintiff Aseltine bore a hidden delivery fee

10   markup. Upon information and belief, the exact same food items would have cost Plaintiff Aseltine 15-

11   20% *less* if he had ordered for pickup or ordered in person. This differential represented a hidden delivery

12   fee.

13       81.    In addition, Plaintiff Asletine's purchase included a hidden "Service Fee" of $3.19 that in

14   fact represented an additional delivery fee.

15       82.    Plaintiff Aseltine would not have made the purchase if he had known the Grubhub Delivery

16   Fee was not truly $2.79.

17       83.    If he had known the true Delivery Fee, Plaintiff Aseltine would have chosen another method

18   for receiving food or ordered from another provider.

19       **I.    Plaintiff Perkins's Experience**

20       84.    Plaintiff Perkins used the Grubhub app to make a purchase of food from Poke Bowl on

21   February 26, 2020, in the total amount of $65.09.

22       85.    When using the app, and prior to placing his order, the Grubhub app stated that the

23   "Delivery Fee" was $2.49.

24       86.    However, the cost of the food ordered by Plaintiff Perkins bore a hidden delivery fee

25   markup. Upon information and belief, the exact same food items would have cost Plaintiff Perkins 15-20%

26   *less* if he had ordered for pickup or ordered in person. This differential represented a hidden delivery fee.

27       87.    In addition, Plaintiff Perkins' purchase included a hidden "Service Fee" of $2.38 that in fact

28   represented an additional delivery fee.

88.     Plaintiff Perkins would not have made the purchase if he had known the Grubhub Delivery Fee was not truly $2.49.

89.     If he had known the true Delivery Fee, Plaintiff Perkins would have chosen another method for receiving food or ordered from another provider.

**J.     Plaintiff Recco's Experience**

90.     Plaintiff Recco used the Yelp app, which uses Grubhub for its delivery orders,  to make a purchase of food from Adelita's Taqueria & Bar on May 5, 2020, in the total amount of $40.87.

91.     When using the app, and prior to placing her order, the Grubhub app stated that the "Delivery Fee" was $2.99.

92.     However, the cost of the food ordered by Plaintiff Recco bore a hidden delivery fee markup. Upon information and belief, the exact same food items would have cost Plaintiff Recco 15-20% *less* if she had ordered for pickup or ordered in person. This differential represented a hidden delivery fee.

93.     In addition, Plaintiff Recco's purchase included a hidden "Service Fee" of $2.72 that in fact represented an additional delivery fee.

94.     Plaintiff Recco would not have made the purchase if she had known the Grubhub Delivery Fee was not truly $2.99.

95.     If she had known the true Delivery Fee, Plaintiff Recco would have chosen another method for receiving food or ordered from another provider.

**K.     Plaintiff Bak's Experience**

96.     Plaintiff Bak used the Grubhub app to make a purchase of food from Sizzler on May 16, 2020, in the total amount of $64.26.

97.     When using the app, and prior to placing her order, the Grubhub app stated that the "Delivery Fee" was $5.49.

98.     However, the cost of the food ordered by Plaintiff Bak bore a hidden delivery fee markup. Upon information and belief, the exact same food items would have cost Plaintiff Bak 15-20% *less* if she had ordered for pickup or ordered in person. This differential represented a hidden delivery fee.

99.     In addition, Plaintiff Bak's purchase included a hidden "Service Fee" of $2.24 that in fact represented an additional delivery fee.

100.    Plaintiff Bak would not have made the purchase if she had known the Grubhub Delivery Fee was not truly $5.49.

101.    If she had known the true Delivery Fee, Plaintiff Bak would have chosen another method for receiving food or ordered from another provider.

## CLASS ALLEGATIONS

102.    Pursuant to California Code of Civil Procedure § 382, Plaintiffs bring this action on behalf of themselves and a Class of similarly situated persons defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Grubhub mobile app or website, and were assessed higher delivery charges than represented.

103.    Excluded from the Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

104.    **Numerosity**:  At this time, Plaintiffs do not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

105.    **Commonality**:  There are questions of law or fact common to the Class, which include, but are not limited to the following:

a.    Whether during the class period, Defendant deceptively represented its Delivery Fee on food deliveries ordered through the Grubhub mobile app;

b.    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c.      Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.      Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e.      Whether Plaintiffs and members of the Class were harmed by Defendant's misrepresentations;

f.      Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of damages; and

g.      Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent its Delivery Fee on food deliveries ordered through the Grubhub app.

106.    **Typicality**:  Like Plaintiffs, many other consumers ordered food for delivery from Grubhub's website or mobile app, believing delivery to be flat, low cost "Delivery Fee" based on Defendant's representations. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiffs and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiffs' claims and the claims of members of the Class emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

107.    **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

108.    **The Proposed Class and Satisfies the Rule 23(b)(2) Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiffs remain interested in ordering food for delivery through Grubhub's website and mobile app; there is no way for them to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

109.    Specifically, Defendant should be ordered to cease from representing their delivery service

as flat, low cost "Delivery Fee" and to disclose the true nature of their mark-ups.

110.    Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

111.    **The Proposed Class Satisfies the Rule 23(b)(3) Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
Violation of California's Unfair Competition Law ("UCL")
Cal. Bus. & Prof. Code § 17200, *et seq.*

112.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

113.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Grubhub's conduct related to deceptively representing that it provides "free delivery" or "$1 delivery" on food deliveries ordered through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

114.    The UCL imposes strict liability. Plaintiffs need not prove that Grubhub intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

115.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

116.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

117.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

118.    Grubhub committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat, low-cost Delivery Fee for food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders, and through the assessment of an elusive "service fee" exclusively charged to delivery customers.

119.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

120.    The harm to Plaintiffs and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

121.    Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Grubhub deceptively represents that it provides "free delivery" or "$1 delivery" for food orders made on its website or mobile app; in reality, however, this marketing message is false because Grubhub's (a) use of the delivery service causes an increase in food prices; and (b) the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

122.    Grubhub's business practices have misled Plaintiffs and the proposed Class and will continue to mislead them in the future.

123.    Plaintiffs relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the Grubhub food delivery service in ordering food from Defendant's website or mobile app.

124.    By falsely marketing a flat, low cost "Delivery Fee," Grubhub deceived Plaintiffs and Class members into making online food purchases they otherwise would not make.

125.    Had Plaintiffs known the truth of the delivery service fee, *i.e.,* that Grubhub's "Service

Charge" and hidden food markups were in all reality "delivery fees," they would have chosen another method for receiving food, including ordering food from another provider.

126.    As a direct and proximate result of Grubhub's unfair, fraudulent, and unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into ordering food for delivery under the false belief that Grubhub's true delivery charge was represented by its prominently represented "Delivery Fee."

127.    As a result of its unfair, fraudulent, and unlawful conduct, Grubhub has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

128.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

## SECOND CLAIM FOR RELIEF
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*

129.    Plaintiffs incorporates the preceding allegations by reference as if fully set forth herein.

130.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of California Civil Code § 1761(e). Defendant's online delivery service utilized by Plaintiffs and the Class is a "service" within the meaning of California Civil Code § 1761(b). The food products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code § 1761(a).

131.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Grubhub food orders for delivery:

a.    "Representing that goods or services have . . . characteristics . . . that they do not have"

(a)(5); and

b.    "Advertising goods or services with intent not to sell them as advertised" (a)(9).

132.    Specifically, Grubhub advertises to customers that the charge for us use of its delivery service represented by the "Delivery Fee" disclosed, but this is false because Defendant imposes hidden delivery charges to consumers through two ways: (1) by secretly marking up food items applied exclusively for delivery orders and (2) by covertly applying a "Service Charge" and misrepresenting that it is actually a delivery charge.

133.    At no time does Grubhub disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

134.    Grubhub continues to violate the CLRA and continues to injure the public by misleading consumers about its delivery fees. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent Grubhub from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiffs, the Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

135.    In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

136.    Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiffs will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiffs seeks only injunctive relief.

///

///

**THIRD CLAIM FOR RELIEF**
**False and Misleading Advertising**
**[Business & Professions Code §§ 17500, *et seq*.]**

137.     Plaintiffs reallege and incorporate the foregoing paragraphs as though fully set forth herein.

138.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose  of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

139.     Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

140.     Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

141.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

142.     Further, Plaintiffs and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of said misrepresentations.

143.     Additionally, Plaintiffs and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and the Class seeks judgment in an amount to be determined at trial, as follows:

(a)     For public injunctive relief, enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)     For punitive damages according to proof;

(f)     For reasonable attorneys' fees and costs of suit;

(g)     For pre-judgment interest; and

(h)     Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.


Dated: November 21, 2022                    **KALIELGOLD PLLC**

By:_____
Jeffrey D. Kaliel
Sophia Goren Gold

*Attorneys for Plaintiffs and the Proposed Class*